UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM ALLEN GARRETT,<br><br>         Plaintiff,<br><br>      v.<br><br>JEFF MACOMBER, et al.,<br><br>         Defendants. | No.  2:16-cv-1336 KJM AC P<br><br>FINDINGS & RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983.  Currently before the court is defendants' motion for summary judgment (ECF No. 111), which plaintiff opposes (ECF No. 120).  For the reasons set forth below, this court recommends that defendants' motion for summary judgment be granted.

   I.      Procedural History

On September 11, 2018, the undersigned screened plaintiff's complaint and found that plaintiff stated claims against defendants Masterson and Baker for violating his Fourteenth Amendment rights to due process and equal protection.  ECF No. 12 at 12.  The court dismissed with leave to amend his Eighth Amendment claims and his claims against defendants Macomber and Cleveland.  Id.  Plaintiff chose to proceed solely on his Fourteenth Amendment claims and voluntarily dismissed without prejudice his Eighth Amendment claims and all claims against

////

1

1  Macomber and Cleveland. See ECF No. 15; ECF No. 16. On January 1, 2020, defendants filed
2  the instant motion for summary judgment. ECF No. 111.

3      II.    Plaintiff's Allegations

4      Plaintiff alleges that defendants violated his Fourteenth Amendment rights to due process
5  and equal protection. ECF No. 1 at 4. Specifically, plaintiff alleges that defendant Masterson
6  discriminated against him for having a mental illness when he removed plaintiff from his position
7  as a worker on the yard crew. Id. Plaintiff argues that he was punished because of his mental
8  illness, and alleges he was in the process of ongoing treatment from a qualified clinician. Id. at 7.

9      He also alleges that defendant Baker denied him due process during his disciplinary
10  hearing because Baker intentionally and purposefully refused to call plaintiff's psychiatrist at his
11  hearing, and claims that Baker "intentionally and purposefully treat[s] and punish[es] prisoners
12  who suffer from mental illnesses disparately on the basis of an unjustified discriminatory
13  standard." Id. at 4. According to the plaintiff, because he was denied the opportunity to call his
14  doctor as a witness, he was subjected to a greater loss of good-time credits and the loss of a
15  paying job. Id.

16      III.    Motion for Summary Judgment

17      A.    Defendants' Arguments

18      Defendants argue that plaintiff's claims fail because defendant Masterson had a rational
19  basis for issuing a rules violation report ("RVR"), and defendant Baker had a rational basis for
20  her decision-making and conduct during the RVR hearing and did not refuse Plaintiff's request
21  for a witness during the hearing. ECF No. 111-2 at 13-19. Defendants also contend that the
22  absence of a witness at the disciplinary hearing did not affect the hearing's proceedings or
23  outcome. Id. at 22-23. Defendants further argue that they are entitled to qualified immunity. Id.
24  at 26-28.

25      B.    Plaintiff's Response

26      At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil
27  Procedure 56(c)(1)(A), which requires that "a party asserting that a fact . . . is genuinely disputed
28  must support the assertion by . . . citing to particular parts of materials in the record." Plaintiff

2

has also failed to file a separate document disputing defendants' statement of undisputed facts, as required by Local Rule 260(b).

However, it is well-established that the pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citations omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). However, the unrepresented prisoners' choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364-65 & n.4 (9th Cir. 1986) (alteration in original) (citations and internal quotation marks omitted). Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule. Id. at 1364 n.4 (citation omitted).

The court is mindful of the Ninth Circuit's more overarching caution in this context, as noted above, that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules. However, only those assertions in the opposition which have evidentiary support in the record will be considered.

Plaintiff opposes the motion on the ground that he believes that a jury could find that defendants discriminated against him for having a mental illness and that defendant Baker denied plaintiff his due process right to call witnesses at his disciplinary hearing. ECF No. 120 at 1-3.

IV.     Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden

of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,

4

809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. V. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

On January 13, 2020, defendants served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 111-1 at 1; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

V. Undisputed Facts

Despite instructions to do so, plaintiff has failed to comply with Local Rule 260(b), which required him to dispute defendant's statement of undisputed facts by filing a separate document that includes all "material facts as to which there is a genuine issue precluding summary judgment or adjudication." In addition, plaintiff has failed to comply with Federal Rule of Civil Procedure

56(c)(1)(A), which required him to cite to materials in the record when asserting a dispute of fact. The court considers the record in its entirety despite plaintiff's failure to strictly comply with the rules, but only those assertions in the opposition which have evidentiary support in the record will be considered. Unless otherwise noted, the following facts are expressly undisputed by the parties or the court has determined them to be undisputed based on a thorough review of the record. The initial background facts are taken from Plaintiff's Complaint, ECF No. 1, Defendant's Statement of Undisputed Facts (DSUF), ECF No. 111-3, Plaintiff's Opposition to Motion for Summary Judgment, ECF No. 120, and Defendant's Reply in Support of Defendants' Motion for Summary Judgment, ECF No. 123.

At the time relevant to the complaint, plaintiff was an inmate at the California State Prison-Sacramento (CSP-SAC) and in custody of the California Department of Corrections and Rehabilitation (CDCR). DSUF ¶ 1. Defendant Baker was employed as a correctional lieutenant, and defendant Masterson was employed as a correctional officer at CSP-SAC. DSUF ¶¶ 1-3. Defendant Masterson was the correctional officer who was assigned to and regularly oversaw inmates assigned to work on the B-Yard. DSUF ¶¶ 4-5. Between August 1, 2015 and November 9, 2015, plaintiff was assigned to the position of yard worker in the B-Yard. Id.

The parties dispute whether retrieving or picking up trash were part of the assigned duties. During his deposition, plaintiff testified that as a yard worker, part of his duties was to collect and sort through trash. ECF No. 111-4 at 14-15 (Def.'s Mot. Summ. J., Ex. A). Defendants contend that his duties were limited to landscaping, not trash sorting. DSUF ¶¶ 4-5; ECF No. 111-4 at 28 (Defendant Masterson's Decl. ¶ 4).

Prior to November 9, 2015, defendant Masterson often noticed plaintiff picking up or retrieving trash without being authorized to do so. DSUF ¶ 8. His acts of retrieving trash created work-related disruptions and security concerns. Id.

The parties dispute whether plaintiff was ever notified that picking up trash was not part of his assigned duties. According to defendant Masterson, his initial contacts with plaintiff focused on informing him that retrieving or picking up trash was not authorized and asking plaintiff to stop. Id. After several confrontations over plaintiff's repeated acts of picking up

1 trash, defendant Masterson warned plaintiff that he would issue a rules violation report (RVR) if
2 he found that plaintiff continued to retrieve trash despite orders not to do so. DSUF ¶¶ 9-10.
3 Defendant Masterson contends that he heard, on multiple occasions, CDCR staff order plaintiff
4 via the public announcement system to stop retrieving trash.[1] DSUF ¶ 12. In contrast, plaintiff
5 states that he "never was told that [picking up trash was not part of his job]" and that he "never
6 had a problem with any officers . . . about the way [he] picked up trash or where [he] picked it
7 up." ECF No. 111-4 at 15 (Def.'s Mot. Summ. J., Ex. A).

8 On November 9, 2015, plaintiff was released to the B-Yard to perform his assigned duties
9 as a yard worker. DSUF ¶ 14. CSP-SAC treatment center staff informed defendant Masterson
10 that plaintiff had been observed picking up trash at the treatment center. DSUF ¶ 16. Plaintiff
11 was not authorized to enter the treatment center and had committed a security breach. DSUF ¶
12 17. Defendant Masterson attests that he told plaintiff to return to his assigned building, to which
13 plaintiff responded, "I don't give a fuck what you say." DSUF ¶ 18. When defendant Masterson
14 handcuffed and transported him to a holding cell, plaintiff admitted to picking up the trash and
15 explained that "that's the only way I can make money." DSUF ¶ 19.

16 The parties dispute defendant Masterson's basis for recommending plaintiff's removal
17 from his assigned position. Defendant Masterson asserts that he issued a rules violation report
18 (RVR) to plaintiff for: plaintiff's failure to obey an order from CDCR staff based on Masterson's
19 experience giving orders to plaintiff to not retrieve trash, plaintiff's failure to provide an adequate
20 explanation when confronted about retrieving trash, and plaintiff's admission to Masterson that he
21 did pick up trash and that he did so for financial gain. DSUF ¶ 20. Defendant Masterson
22 contends that he recommended that plaintiff be removed from his job assignment[2] because his

---

[1] When asked during his deposition if plaintiff received instructions over a speaker system to stop picking up trash, plaintiff neither denied nor confirmed. ECF No. 111-4 at 11 (Def.'s Mot. Summ. J., Ex. A). Thus, this assertion is considered undisputed.

[2] Plaintiff does not dispute Masterson's assertion that plaintiff admitted to picking up trash and his justification as to why, nor does he contest that defendant Masterson only made a recommendation and did not participate in the adjudication of his work status review. Rather, he asserts that Masterson did not allow him to work before the RVR was adjudicated and "referr[ed] [sic] that plaintiff be unassigned." ECF No. 120 at 7. Accordingly, defendant Masterson's assertions regarding plaintiff's admission and Masterson's lack of participation in the decision to

7

pattern of behavior created unnecessary work-related disruptions and security concerns.  DSUF ¶ 21.  Plaintiff asserts that defendant Masterson was aware that plaintiff dug through trash because of his mental illness.  ECF No. 120 at 7.  He further contends that defendant Masterson "repeatedly told [plaintiff that] he did not want [him] to work on the yard crew and that [Masterson] only hired higher functioning prisoners."  ECF No. 1 at 5.  According to plaintiff, defendant Masterson "only wanted prisoners working on the yard crew who were . . . in control over their mental illnesses."  Id. at 4; ECF No. 111-4 at 15.  Plaintiff asserts that Masterson stated, "I don't want no trash digger on my work crew" and "I'm going to write you up and get you fired."  ECF No. 111-4 at 18.

Defendant Baker was the presiding senior hearing officer during the December 17, 2015 hearing that adjudicated the RVR defendant Masterson issued to plaintiff.  DSUF ¶ 24.  Plaintiff appeared at the RVR hearing and was advised that he could request witnesses for the RVR hearing.  DSUF ¶¶ 25-26.

Parties dispute whether plaintiff requested to call a witness at his hearing.  According to defendant Baker, plaintiff waived his right to witnesses at the RVR hearing, admitted to guilt and entered a plea of guilty.  DSUF ¶¶ 26-27.  Plaintiff does not expressly assert in his complaint that he requested a witness at the disciplinary hearing, but he does so in his opposition.  ECF No. 120 at 4, 9.  However, plaintiff does not provide a verified statement, or a proffer, as to when he made the request, who he made the request to, and whether he made multiple requests.

Defendant Baker asserts that plaintiff made the following statement during the RVR hearing: "I was having urges to go through the trash, and I tried to talk to my Clinician about ways to deal with this.  He came along and told me not to do it, and it was hard for me to change up my routine."  DSUF ¶ 28.  Defendant Baker understood this to be plaintiff's admission to retrieving trash despite defendant Masterson's orders.  Id.

Defendant Baker asserts that she reviewed information by the clinical staff concerning plaintiff's mental illness and concluded that plaintiff should be held accountable for disobeying a

---

remove plaintiff is deemed undisputed.

8

direct order from CDCR staff and that the credit and privilege losses should be mitigated in light of plaintiff's health conditions.[3] DSUF ¶ 32. To defendant Baker, any witness testimony concerning plaintiff's mental health condition would not affect the penalty assessed during the hearing. Id. Defendant Baker decided to assess a fifteen-day credit loss and elected to not restrict plaintiff's access to family or group programming. Id. Regarding Masterson's recommendation that plaintiff be removed from his work assignment, defendant Baker referred plaintiff to the Unit Classification Committee (UCC) for a review of his work privilege status. Id. Baker asserts that the UCC convened separately and adjudicated plaintiff's work status on January 5, 2016 and that Baker did not make any decision to remove plaintiff from his assigned work duties.[4] DSUF ¶ 35. Defendants attest that since losing his job as a result of the RVR, plaintiff has regained work privileges through follow up appearances before the UCC. DSUF ¶ 38.

VI.   Analysis

    A.   Fourteenth Amendment

        i.   Due Process

Pursuant to the Fourteenth Amendment to the U.S. Constitution, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

> Prisoners may . . . not be deprived of life, liberty or property without due process of law . . . [T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed . . . . [T]here must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.

Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citations omitted). When an inmate is subject to

---

[3] Plaintiff asserts that defendant Baker was aware that he was unable to stop retrieving trash because of his mental illness but disregarded the recommendations from the clinical staff. ECF No. 120 at 10. He only cites evidence showing that clinical staff recommended against assessing a SHU term, time on C-status or loss of yard time, none of which plaintiff asserts to have happened. Id. at 47 (Pl.'s Opp'n, Ex. H). Thus, defendant's assertion is deemed undisputed.

[4] Plaintiff claims that defendant Baker participated in the UCC hearing that adjudicated his work status but has not provided evidence to dispute that fact. ECF No. 120 at 7. Accordingly, defendant Baker's assertion that she did not make any decision to remove plaintiff from his position is deemed undisputed.

disciplinary sanctions that include the loss of good-time credits, prison officials must provide the prisoner with (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. Id. at 539, 563-70.

"When prison officials limit an inmate's efforts to defend himself, they must have a legitimate penological reason." Koenig v. Vannelli, 971 F.2d 422, 423 (9th Cir. 1992) (per curiam) (citations omitted) (concluding that prisoners do not have a right to have an independent drug test performed at their own expense). The right to call witnesses may be limited by "the penological need to provide swift discipline in individual cases . . . [or] by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." Ponte v. Real, 471 U.S. 491, 495 (1985). Prison officials must eventually explain their reasons for limiting the prisoner's ability to defend himself, and where the record does not contain such information, it is error to grant summary judgment. See Serrano v. Francis, 345 F.3d 1071, 1079 (9th Cir. 2003); cf. Ponte, 471 U.S at 499 (allowing in camera review of prison officials' reasons for limiting prisoner's defense). "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board . . . ." Superintendent v. Hill, 472 U.S. 445, 455 (1985).

    ii. Equal Protection

The Fourteenth Amendment's Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." This establishes the rule that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985); see also Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). A plaintiff may establish an equal protection claim by showing that a defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, Serrano, 345 F.3d at 1082, or that similarly situated individuals were intentionally treated differently without rational relationship to a legitimate state purpose. City of Cleburne, 473 U.S. at 440. Neither prisoners

1  nor mentally ill persons qualify as a protected class.  See Mayner v. Callahan, 873 F.2d 1300,

2  1302 (9th Cir. 1989).  Thus, application of the rational basis test is appropriate.

        B.      Discussion

              i.   Due Process Claim Against Defendant Baker

5        Plaintiff argues that his due process rights were violated because he was not permitted to

6  call his psychiatrist as a witness at the RVR hearing.  The RVR states that plaintiff was advised of

7  his right to request witnesses, that he did not indicate that he was requesting any witnesses prior

8  to the hearing, and that no testimony was obtained.  ECF No. 111-4 at 42 (Def.'s Mot. Summ. J.,

9  Ex. E).  According to defendant Baker's declaration and the RVR hearing notes, plaintiff waived

10  his rights to call witnesses during the disciplinary hearing.  Id. at 33, 42, 75.

11        Plaintiff's deposition transcript indicates that CDCR staff had previously informed

12  plaintiff that a witness would be unnecessary given the nature of the evidence.  The record in this

13  regard shows:

14          Q:      And what was the reason that they denied your witness – what was the reason they gave you?

16          A:      [T]he senior hearing officer defendant Baker told me that, you know, she was going to consider, you know, the mental health assessment . . . . I said then, you know, considering a mental health assessment is not enough when the person is being disciplined for something that's a part of their mental health issue. Just considering a mental health assessment is not enough. You got to get the psychiatrist in. She said she don't need them. She's going to consider mental health assessment in that room.

21  Id. at 20 (Def.'s Mot. Summ. J., Ex. A).

22        Based on the apparent conflict between plaintiff's version of the events and the record

23  submitted by defendant Baker, there may be some factual dispute as to whether plaintiff's right to

24  call witnesses was denied.  However, unless plaintiff demonstrates that "the factual dispute

25  [requires] a jury or judge to resolve the parties' differing versions of the truth at trial," the dispute

26  will not defeat Baker's motion for summary judgment.  T.W. Elec. Serv., 809 F.2d at 630.

27        In this case, plaintiff's claim that he requested his psychiatric doctor as a witness and was

28  subsequently denied is directly contradicted by the record.  Plaintiff has not provided any

11

evidence to indicate that he specifically made this request to defendant Baker either before or during the disciplinary hearing.  He only claims that defendant Baker had a duty to allow a treating psychiatrist to supervise the disciplinary hearing regardless of whether or not plaintiff made a request.  Further, plaintiff fails to point to anything in the record suggesting there was no "penological need" motivating the alleged denial of his witness request, nor does plaintiff claim that the record showing his waiver of witnesses is faulty or falsified.

Even if the court were to assume that plaintiff's unsupported version of the facts is true, he has not provided evidence of what his psychiatrist would have testified to if called.  He has not submitted any declarations from the proposed witness, nor indicated what facts he or she could have provided.  In his complaint, plaintiff claims that the denial of his psychiatrist as a witness led to a greater loss of good time credits and the loss of his work position, ECF No. 1 at 4, but plaintiff never indicates what circumstances his witness could have testified to that would have mitigated his penalty or exonerated him.  Also, plaintiff claims that he was placed in the position of yard worker specifically for the treatment of his mental illness but does not support this claim with and evidence or testimony from his psychiatrist.  Id. at 5.

Moreover, the evidence plaintiff cites to in the record suggests that his psychiatrist's testimony would not have affected the outcome.  Plaintiff contends that defendant Baker disregarded the clinical staff's recommendations and cites to the RVR Mental Health Assessment.  The assessment simply shows that plaintiff's clinician recommended against a SHU term or time on C-status and that if such penalties were assessed, plaintiff should not be confined to his quarters or restricted from coping devices.  ECF No. 120 at 47 (Pl.'s Opp'n, Ex. H).  Based on the record, plaintiff did not receive these punishments, but rather defendant Baker referred to the clinician's assessment in electing to mitigate his penalties.

Even if the court drew all inferences in plaintiff's favor, he has not demonstrated that calling his psychiatrist as a witness would have produced relevant or non-duplicative testimony.  Accordingly, plaintiff has not raised a genuine issue of material fact in regard to his due process claim.  See Mack v. Lamarque, 338 F. App'x 636 (9th Cir. 2009) (finding that the district court properly granted summary judgment on plaintiff's due process claim arising from defendant's

1 refusal to call witnesses at plaintiff's disciplinary hearing because "plaintiff failed to raise a
2 genuine issue of material fact as to whether those witnesses would have any additional, relevant
3 evidence" (citing Wolff, 418 U.S. at 566)); Ramirez v. Galaza, No. 1:99-cv-6282 OWW DLB P,
4 2006 U.S. Dist. LEXIS 56065, at *20, 2006 WL 2320572, at *6 (E.D. Cal. Aug. 10, 2006)
5 ("While Plaintiff makes the conclusory allegation that the denial of witnesses violated his due
6 process rights, he does not proffer what the substance of their testimony would have been or how
7 it could have helped him . . . . Thus, plaintiff has failed to present any facts which would raise a
8 triable issue that he was denied the testimony of a witness who would offer relevant evidence in
9 his favor.").

10       The court finds that there is no genuine dispute of material fact, and defendants are
11 entitled to summary judgment on plaintiff's due process claim that his limited right to call
12 witnesses at his disciplinary hearing was denied.

13                 ii.   Equal Protection Claims

14      Plaintiff argues that both defendants Masterson and Baker violated his equal protection
15 rights by discriminating against him based on his mental health illness.

16                 1.   Defendant Masterson

17      Plaintiff claims that Masterson wrote him up in order to get him off the yard crew because
18 he had mental health conditions. ECF No. 1 at 5. Plaintiff argues that part of his duties was to
19 collect and sort trash and that he had never been told not to pick up trash before his contacts with
20 defendant Masterson. According to defendant Masterson, plaintiff's duties did not include
21 retrieving trash, and he had warned plaintiff that he would issue an RVR if plaintiff continued to
22 pick up trash against orders not to do so. As indicated above, there may be a factual dispute as to
23 whether defendant Masterson told plaintiff he only hired higher functioning people on his yard
24 crew and stated that Masterson was "going to write [plaintiff] up and get [him] fired." Id. at 4;
25 ECF No. 111-4 at 15, 18 (Def.'s Mot. Summ. J., Ex. A).

26      Assuming that plaintiff's version of the events is correct, his equal protection claim
27 nonetheless fails because he has not shown that he was treated differently from other similarly
28 situated inmates nor that defendant Masterson's conduct was not "rationally related to a

1    legitimate state interest." Even if plaintiff's duties included collecting trash, it is undisputed that
2    he was not allowed to enter the treatment center and that by doing so, he committed a security
3    breach. It is also undisputed that when defendant Masterson approached plaintiff, he admitted to
4    collecting trash and refused to follow Masterson's orders to stop. Under Section 3005(b) of Title
5    15 of the California Code of Regulations, inmates must promptly obey orders from department
6    staff and other agency employees with authorized responsibility for the custody and supervision
7    of inmates and parolees. Section 3005(b) underlines the CDCR's broader penological interest of
8    maintaining order and security within the institution. Thus, defendant Masterson's issuance of an
9    RVR was rationally related to a legitimate state interest. In addition, plaintiff's claim fails
10   because there is no evidence to suggest that other similarly situated inmates were treated
11   differently. For instance, he has not submitted testimonies from other inmates that demonstrate
12   that collecting trash in the treatment center was part of the duties of a yard worker or that others
13   who committed security breaches or who disobeyed orders from defendant Masterson were not
14   issued RVRs.

15   Furthermore, even if the court draws all inferences in plaintiff's favor, he has not
16   demonstrated defendant Masterson's personal participation in a constitutional violation. A claim
17   under Section 1983 will not survive summary judgment if the non-moving party presents no
18   evidence supporting a reasonable inference that there was an actual connection or link between
19   the defendant's challenged conduct and the alleged deprivation of plaintiff's constitutional or
20   statutory rights. See Monell v. Department of Social Servs., 436 U.S. 658, 692 (1978); Rizzo v.
21   Goode, 423 U.S. 362, 370–71 (1976); Leer v. Murphy, 844 F.2d 628, 633–34 (9th Cir. 1988). "A
22   person 'subjects' another to the deprivation of a constitutional right, within the meaning of §
23   1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform
24   an act which he is legally required to do that causes the deprivation of which complaint is made."
25   Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted). The requisite causal
26   connection can be established not only by some kind of direct personal participation in the
27   deprivation, but also by setting in motion a series of acts by others which the actor knew or
28   reasonably should have known would cause others to inflict the injury. Id. at 743–44. Sweeping

1    conclusory allegations will not defeat summary judgment.  Id. at 634.

2        In this case, it is undisputed that defendant Masterson only recommended that plaintiff be
3    removed from his yard worker position.  Plaintiff has not submitted any evidence demonstrating
4    Masterson's involvement in the adjudication of his work position.  The link between defendant
5    Masterson's initial recommendation and the UCC's decision to remove plaintiff is too attenuated
6    to support liability.  The hearing officer could have found plaintiff not guilty or decided not to
7    refer him to the UCC for further assessment regarding his work status.  The UCC itself could
8    have decided in plaintiff's favor and reinstated him as a yard worker.  There is no evidence to
9    suggest that defendant Masterson participated in or influenced the outcome of plaintiff's hearings.
10   A mere recommendation does not constitute direct participation in a constitutional violation.

11       In sum, to the extent plaintiff claims defendant Masterson discriminated against him based
12   on his mental illness, plaintiff has not alleged facts demonstrating that he was intentionally
13   discriminated against on basis of his membership in a protected class, or that he was intentionally
14   treated differently that other similarly situated inmates without a rational basis.  As a result, there
15   is no genuine dispute as to any material facts regarding plaintiff's equal protection claim against
16   defendant Masterson, and summary judgment should be granted on this issue.

17                                 2.   Defendant Baker

18       Plaintiff claims that defendant Baker treated him unfairly during his disciplinary hearing
19   because of his mental illness.  ECF No. 1 at 4; ECF No. 120 at 7, 9.  Plaintiff has failed to present
20   any evidence in support of the essential elements of his claim, namely that defendant Baker
21   discriminated against him by rejecting his request for witnesses without a rational basis or that
22   she treated him differently than other similarly situated inmates during his hearing.

23       To the extent that plaintiff argues that defendant Baker discriminated against him by
24   refusing to call his psychiatrist as a witness, the evidence before the court suggests no
25   discrimination occurred.  Examination of the record shows that Baker concluded that plaintiff's
26   statement was an admission of guilt, that witness testimony regarding his mental illness would
27   not rebut the fact that plaintiff disobeyed orders by CDCR staff, and that the testimony of
28   plaintiff's psychiatrist would be redundant given the available clinician staff's evaluation and

15

recommendations. It is undisputed that during the RVR hearing, plaintiff stated, "I was having urges to go through the trash, and I tried to talk to my Clinician about ways to deal with this. He came along and told me not to do it, and it was hard for me to change up my routine," and that defendant Baker understood this statement to be an admission of guilt. It is also undisputed that defendant Baker referred to and based her assessment on the clinician's report. Plaintiff presents no evidence indicating that his proposed witness would testify to facts that would rebut a finding that he disobeyed a CDCR officer's orders, and he also fails to demonstrate how defendant Baker ignored the clinician's recommendations, as the record indicates that Baker elected to mitigate the penalty based on the clinician report. Thus, even if the court assumes that plaintiff's version of the facts is true, the record supports a rational basis for Baker's refusal of witnesses. Plaintiff does not a raise a genuine dispute of material fact as to whether defendant Baker denied his request for witnesses

      To the extent that plaintiff claims that Baker's recommendation of his removal from his job assignment was discriminatory, this claim fails because he has not shown Baker's personal participation in the alleged constitutional violation. Though plaintiff contends that his mental health deteriorated as a result of his removal from his job assignment, he has not submitted evidence that shows that defendant Baker's assessment of a fifteen-day credit loss and referral to the UCC for work privilege review was discriminatory or unreasonable. In contrast, defendant Baker argues that her assessment of credit loss corresponds with the credit loss range under Section 3323(h) and that she mitigated possible credit loss due to the clinical staff's recommendations. Defendant Baker also argues that she did not restrict plaintiff's access to his family or group programming. Plaintiff does not dispute these allegations and fails to demonstrate how Baker's conduct was unreasonable or different from how other similarly situated inmates were treated.

      As with defendant Masterson, the causal connection between Baker's referral of plaintiff to the UCC for work status review and the final adjudication of his work status is too attenuated to support liability. It is undisputed that defendant Baker did not participate in the adjudication of plaintiff's work status change and that Baker was not authorized to decide his work status change

as a senior hearing officer. Rather, the final decision to remove plaintiff from his work assignment was made by another body and at another proceeding, where plaintiff had a separate opportunity to plead his case and argue why his job should not be terminated. Moreover, insofar that the UCC used Baker's findings during the RVR hearing against plaintiff's interests during the work status hearing, such use does not demonstrate discrimination or unreasonableness on defendant Baker's part.

Lastly, plaintiff argues that defendant Baker discriminated against him by failing to call a psychiatric doctor on her own initiative, regardless of whether he requested a witness. This argument fails because defendant Baker has no duty to call any witnesses where such testimony is superfluous or duplicative.

Therefore, defendant Baker is entitled to summary judgment as to plaintiff's equal protection claim.

Because the court finds no violation of plaintiff's Fourteenth Amendment rights, it need not address defendants' argument that they are entitled to qualified immunity.

### VII.   Plain Language Summary of this Order for a Pro Se Litigant

The magistrate judge recommends that defendants' motion for summary judgment be granted. Your claim that defendant Baker violated your due process rights when she denied your request for a witness fails because Baker showed that she had a rational basis for denying your request and that she considered your mental health condition by using the clinician staff's written reports. Your equal protection claims against both defendants fail because you have not submitted evidence showing that they discriminated against you by treating you differently from other similarly situated inmates or that they did not have a rational basis for their conduct.

Accordingly, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's motion for summary judgment, ECF No. 111, be GRANTED; and
2. Judgment be entered for defendants.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written

17

objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. **Due to exigencies in the court's calendar, there will be no extensions of time granted.** The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATE: August 25, 2020

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE